**UNITED STATES of America ex rel. Thomas MARINO**

v.

**D. N. MYERS, Superintendent.**
**Misc. No. 3160.**

United States District Court
E. D. Pennsylvania.

Nov. 9, 1966.

Matthew J. Ryan, III, Philadelphia, Pa., for relator.

Michael J. Rotko, Asst. Dist. Atty., Philadelphia, Pa., for respondent.

## OPINION

LUONGO, District Judge.

This habeas corpus petition by Thomas Marino attacks a 1947 murder conviction in the Pennsylvania courts on the ground that introduction in evidence of prior convictions at his trial under the then prevailing so-called Parker Rule [1] deprived him of due process. This same claim was presented in State habeas proceedings and was rejected by the Supreme Court of Pennsylvania which held that, under the facts of Marino's case, the application of the Parker Rule did not violate due process. Commonwealth ex rel. Marino v. Myers, 419 Pa. 448, 214 A.2d 491 (1965).

■■ In the discharge of this court's responsibility and duty to interpret and enforce federal rights,[2] the record of the proceedings in the Pennsylvania courts have been carefully reviewed. The matters complained of are record events occurring during the trial, and since rela-

---

1. "The 'Parker Rule' permitted, in first degree murder cases, evidence of a defendant's prior unrelated convictions to be submitted to the jury during the Commonwealth's case in chief for the purpose of assisting the jurors in fixing the penalty at death or life imprisonment in the event they found the defendant guilty of murder in the first degree. See Commonwealth v. Parker, 294 Pa. 144, 143 A. 904 (1928), interpreting the Act of May 14, 1925, P.L. 759, § 1, 18 P.S. § 2222. This procedure was modified by the enactment of the Split-Verdict Act, Act of December 1, 1959, P.L. 1621, § 1, 18 P.S. § 4701 under which evidence of unrelated convictions may be admitted only in a supplementary hearing held for the purpose of fixing the penalty after guilt has been ascertained." Commonwealth ex rel. Marino v. Myers, 419 Pa. 448, 450 n. 2, 214 A.2d 491 (1965).

2. In a concurring opinion in Commonwealth ex rel. Marino v. Myers, at page

458, 214 A.2d 491, the Chief Justice of Pennsylvania suggested that, since the highest court of the State has spoken, this court should, under the "Doctrine of Comity," refrain from further review. Were this court to accept that suggestion, it would be abdicating its clearly defined responsibility.

"Insofar as this [habeas corpus] jurisdiction enables federal district courts to entertain claims that State Supreme Courts have denied rights guaranteed by the United States Constitution, it is not a case of a lower court sitting in judgment on a higher court. It is merely one aspect of respecting the Supremacy Clause of the Constitution whereby federal law is higher than State law." Brown v. Allen, 344 U.S. 443, 511, 73 S.Ct. 397, 448, 97 L.Ed. 469 (1953) (concurring opinion); and see Townsend v. Sain, 372 U.S. 293, 318, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963); Fay v. Noia, 372 U.S. 391, 424, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963).

tor does not attack the accuracy of the transcript of those proceedings, the merits of his claim may be disposed of on the State court record, without an evidentiary hearing.

■ After a thorough review of the record, and after independent consideration of relator's claim, I conclude that I can add nothing to the exhaustive and illuminating opinion written for the Pennsylvania Supreme Court by Justice Roberts. I am in accord with his analysis of the facts, the applicable rules of law, and his conclusion that the introduction of Marino's prior record was not so prejudicial as to deprive him of due process of law.

A few comments are in order, however, since counsel has cited United States ex rel. Lowry v. Myers, 364 F.2d 297 (3d Cir. 1966), decided after Marino's case was decided by the Pennsylvania Supreme Court. *Lowry* in no way alters the applicable principles, it fits squarely into the pattern of the cases discussed in Justice Roberts' opinion. The rule was thus enunciated in Judge Freedman's opinion in *Lowry* at pages 300–301:

"Due process is denied by the introduction of a defendant's criminal record if it impairs his right to a fair determination by the jury of the question of his guilt. * * * [T]he test is whether in all of the circumstances of the particular case it can be said that the defendant may have been seriously prejudiced by the introduction of his prior criminal record. This question must be dealt with realistically and consideration must be given to all those elements which are relevant to a fair appraisal of the circumstances,

such as the existence of a substantial issue of guilt and the nature as well as the number of the prior convictions."

Lowry's connection with the crime there charged (felonious killing committed in the perpetration of an armed robbery) was that he had driven two others to the scene. He denied that he was aware of their purpose to rob. There was no evidence that he was present at the scene. Under those circumstances, there was a substantial issue as to Lowry's guilt. The prior record consisted of convictions on charges of larceny, receiving stolen goods, and operation of a motor vehicle without the owner's consent. The number and the nature of the convictions (thefts of property) were held to be gravely prejudicial[3] in the jury's determination of Lowry's guilt on the similar property offense (robbery) which gave rise to the killing.

In Marino's case, it is undisputed that he shot and killed the victim. The defense was that Marino was provoked by the victim's insulting remarks about Marino's daughter and that the killing was not premeditated. There was, however, substantial evidence to support a finding of premeditation.

■■ It must be presumed that the introduction of any record of prior convictions at the trial of a person charged with the commission of a crime is prejudicial. As pointed out above, however, the test to be applied in these relict cases[4] pre-dating the Split-Verdict Act is whether, under the circumstances of the particular case, the prejudice is so great as to deprive the defendant of a fair trial. Marino's prior record con-

---

3. While the record was introduced for the purpose of enabling the jury to decide whether the penalty should be life imprisonment or death, in the Commonwealth's closing statement it announced that it was not seeking the death penalty. That circumstance might well have furnished additional basis for the conclusion of grave prejudice.

4. United States ex rel. Scoleri v. Banmiller, 310 F.2d 720 (3d Cir. 1962), re-

hearing denied, 310 F.2d 736, cert. denied, 374 U.S. 828, 83 S.Ct. 1866, 10 L.Ed.2d 1051 (1963); United States ex rel. Rucker v. Myers, 311 F.2d 311 (3d Cir. 1962); United States ex rel. Johnson v. Rundle, 243 F.Supp. 695 (E.D.Pa.1964), aff'd per curiam, 349 F.2d 416 (3d Cir. 1965), petition for cert. filed, 35 U.S.L.Week 3001 (No. 423, 1965 Term; renumbered No. 14, 1966 Term); and United States ex rel. Lowry v. Myers, supra.

sisted of convictions on charges of aggravated assault and battery (1928); carrying concealed deadly weapon (1937); and assault and battery with intent to kill (1938). Two of the convictions (aggravated assault and battery and assault and battery with intent to kill) are equivocal on the issue of premeditation, being at least as consistent with Marino's defense of hot blood or provocation as with the Commonwealth's claim of premeditation.

The petition for writ of habeas corpus will be denied.

The Court expresses its appreciation to Matthew J. Ryan, III, Esquire, who has, without compensation, rendered outstanding service on relator's behalf at the request of the Court.

Petition denied.